Commonwealth ex rel. Buncher, Appellant, *v.* Barr.

Argued March 26, 1951. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

*Clarence M. Freedman,* for appellant.

*Irving R. Shull,* with him *Alfred I. Ginsburg* and *Bernard L. Lemisch,* for appellee.

Opinion by Hirt, J., July 19, 1951:

Courts have always recognized the propriety of awarding the custody of a child of tender years to its mother. But a mother's right to custody is not absolute and will give way to the best interests of the child. *Latney's Appeal,* 146 Pa. Superior Ct. 20, 21 A. 2d 521; *Com. ex rel. Martocello v. Martocello,* 148 Pa. Superior Ct. 562, 25 A. 2d 855. The paramount consideration is the welfare of the child. *Hixon's Appeal,* 145 Pa. Superior Ct. 33, 20 A. 2d 925. In the present proceeding the credible testimony clearly demonstrates that the interest of the child cannot be best served by maternal care. There were compelling reasons for the refusal of the court to order a return of the child to

its mother, the relatrix. And the propriety of the order is not affected by the agreement entered into by the parties, prior to their divorce in December 1949, which by its terms gave the custody of the child to relatrix. A contract such as this does not create a property right in a child and is always subject to being set aside by the court in the best interests of the child. *Com. ex rel. Children's Aid Soc. v. Gard et ux.*, 362 Pa. 85, 66 A. 2d 300.

In January 1950 on the eve of her remarriage, relatrix delivered the child to the respondent. It is unimportant that she may have intended to recover the child later and take it with her to her new home with her present husband in Pittsburgh. But in passing it may be noted that her present husband has not appeared to testify as to his desires in the matter. The child was in pitiable physical condition when respondent received it and he properly refused to return it to relatrix who had been so neglectful of it. The child was in a highly nervous state and was thin and emaciated from lack of proper food. The boy then was two and one-half years old and he had not yet received the training to care for himself, which usually is given to much younger children. His physical needs had been neglected and parts of his body were excoriated. In his talk the child used language that was profane and at times obscene, indicating a parrot-like repetition of what he had heard in his former environment. The respondent is a practicing physician well able to care for the child. At the time of the hearing he was living at a hotel in Philadelphia but had made arrangements to move into an apartment where he can maintain the child properly. In the interval he had placed the child in a well-appointed boarding home for children in Philadelphia, conducted by a competent woman. The child responded to the care it received there, over a period of nine months, and at the time of the hearing

had developed into a normal child. Respondent spent some time daily with the child as well as over week ends.

From our independent review of the record we find ourselves in complete accord with this conclusion of Judge BONNIWELL: "We are convinced and find that the best interests and welfare of Albert Joel Barr require that the normal relationship with his father should be continued, but subject to the right of the mother of visitation at proper and reasonable times." Relatrix has been welcome to visit the child in the boarding home at any time; and she has seen the child there on at least two occasions.

Order affirmed.