337 A.2d 586

**Edwin B. LEE and Rita M. Lee, his wife on behalf of themselves and all others similarly situated, Appellants,**

**v.**

**CHILD CARE SERVICE DELAWARE COUNTY INSTITUTION DISTRICT et al.**

Supreme Court of Pennsylvania.

Argued Nov. 25, 1974.

Decided May 13, 1975.

642

Martin H. Aussenberg, David A. Scholl, Suzanne Noble, Delaware County Legal Assistance Assn. Inc., Chester, for appellants.

Stewart C. Crawford, Media, for appellee, Charlotte L. Hammell.

Ralph B. D'Iorio, Media, for appellee, Carolyn J. LaBrum.

Melvin G. Levy, Levy & Levy, L. J. Sinatra, Chester, for appellee, Child Care Service of Delaware County Institution Dist.

Matthew M. Strickler, Philadelphia, for appellee, Norma Sullivan.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In this appeal, appellants, as representatives of all those similarly situated, challenge the use of "placement agreements" by the Child Care Service of the Delaware County Institution District. Under these agreements parents consent to the transfer of the custody of their children to the Service. Appellants contend that these agreements are without statutory authorization and that their use violates the due process clause of the federal constitution.

The action from which this appeal arises was filed in equity. The chancellor, concluding that appellants had failed to state a cause of action upon which relief could be granted, sustained appellees' preliminary objections and dismissed the class aspects of the action. We affirm.

According to their complaint, on August 28, 1972, appellants, Mr. and Mrs. Edwin Lee, entered into a "placement agreement" transferring custody of their son to the Child Care Service. About eight months later, the Lees wrote the Service requesting that their child be returned to their custody. When the Service refused to return the child, the Lees brought this action both as individuals and as class representatives.

As individuals, appellants claim that they were fraudulently induced to sign the agreement transferring custo-

dy. On this theory they seek to recover $10,000 compensatory and $20,000 punitive damages against the appellees: the Service, the caseworker who it is asserted induced them to sign the agreement, the director of the Service, the administrative assistant of the Service and two unknown, unnamed agents of the Service. They also seek to recover from appellees $2,500 compensatory and $5,000 punitive damages for the intentional infliction of mental distress and loss of consortium.

The Lees also assert that they are representatives of a class composed of all residents of Delaware County the custody of whose children has been or may in the future be transferred by parents to the Service pursuant to "placement agreements." On behalf of this class, the Lees request the rescission of the agreements transferring custody from the members of the class to the Service, $10,000 compensatory and $20,000 punitive damages, and preliminary and permanent injunctions ordering the Service to cease entering into "placement agreements" without court approval.

■ Appellees filed preliminary objections. After a hearing on appellants' application for a preliminary injunction, the chancellor sustained appellees' preliminary objections with leave to amend as to the individual claims. These individual claims are apparently still pending below and are not the subject of this appeal. As already noted the chancellor also sustained preliminary objections to the class claims and dismissed the class action. It is from that portion of the order that this appeal arises.[1]

1. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(4), 17 P.S. § 211.202(4) (Supp.1974).

An order sustaining preliminary objections and dismissing the class aspects of action is a final order even though individual aspects of the action may survive the order. The order effectively puts out of court those members of the class not parties to the individual action. In *DiAngeli v. Fitzgerald*, 433 Pa. 529, 252 A. 2d 706 (1969), we held that where the court sustains preliminary objections as to one plaintiff but overrules the objections as to

■■■■■■■■■■■■■■■■■■■■■■■■■

The Service utilizes "placement agreements"[2] pursuant to regulations of the Department of Public Welfare. Regulation 3220 C provides:

> "Children shall not be removed from their own homes without the written consent of the parents . . . unless the child has been committed to the agency by the court."

the other, the order sustaining the objections is a final order as to the plaintiff whose action is dismissed. In the present action, we have essentially the same situation with the class as the "parties" who are put out of court. We conclude that the class, by its representatives, may appeal from the decree of the chancellor.

**2.** The following is the agreement actually used by the Service:

CHILD CARE SERVICE, DELAWARE COUNTY
INSTITUTION DISTRICT
Delaware County, Pennsylvania

IN Re:                          :
CHILDREN                        :

THIS AGREEMENT, made _____ day of _____, 19__ between _____ of _____ and
[parents, guardian, etc.]
(CHILD OR CHILDREN)
CHILD CARE SERVICE of the DELAWARE COUNTY INSTITUTION DISTRICT, Front and Orange Streets, Media, Pennsylvania.
[parents]
I, WE _____ request placement for

_____
(CHILD OR CHILDREN)
because [reason, e. g., Mr. and Mrs. Lee wrote in this space "I feel Phil needs extra help."]

I, WE agree that said child/children may be removed from [our home] and hereby grant and give custody of said child/children to said Child Care Service.

I, WE agree to work with Child Care Service until plans for said child/children are completed in order that the interests of said child/children shall be adequately protected. I, WE further agree that conditions for the return of the child/children shall be subject to the approval of CHILD CARE SERVICE.

Child Care Service agrees to provide placement, clothing, medical care and other requisites, and to arrange appropriate visiting provisions.

In case of disagreement between the parties involved and said Child Care Service, the Juvenile Court of Delaware County is available to review the matters in dispute and enter such order or orders as shall be necessary.

CASEWORKER:                    _____PARENTS–GUARDIAN
_____               _____PARENTS–GUARDIAN

Regulation 3231 D sets the requirements for such agreements:

"When a child is received for foster care at the request of the parents, or with their consent, the placement agreement . . . shall be in writing signed by the child's parents and a representative of the public child welfare agency. A petition to the Juvenile Court shall not be required for the placement of a child, except where a change of custody or guardianship is deemed advisable for [the child's] protection."

Appellants assert that these regulations contravene the statutes governing administration of child care services and are therefore void. They contend that under Pennsylvania statutes custody of a child cannot, even with parental consent, be transferred to an agency without a court order.

The source of the Department of Public Welfare's authority to promulgate regulations is the Act of June 13, 1967, P.L. 31, No. 21, art. 7, § 703, 62 P.S. § 703 (1968).

"The department shall make and enforce all rules and regulations necessary and appropriate to the proper accomplishment of the child welfare duties and functions vested by law in the county institution districts or their successors."

The duties and functions vested in the county institution districts are contained in the Act of June 24, 1937, P.L. 2017, art. IV, § 405, as amended, 62 P.S. § 2305 (1968):

"The local authorities of any institution district shall have the power, and for the purpose of protecting and promoting the welfare of children and youth, it shall be their duty to provide those child welfare services designed to keep children in their own home, prevent neglect, abuse and exploitation, help overcome problems that result in dependency, neglect or delinquency, to provide in foster family homes or child caring institutions adequate substitute care for any child

in need of such care and, upon the request of the court, to provide such service and care for children and youth who have been adjudicated dependent, neglected or delinquent."

The chancellor, after reviewing the statutes, concluded that "[the Service] not only [may] accept children for placement, it is its duty to provide such a service for children needing substitute care. . . . The law clearly intends [the Service] to provide services either on a voluntary basis (parental consent, or by Juvenile Court referral."

■ We agree that the Department of Public Welfare in adopting regulations 3220 C and 3231 D was acting well within its statutory power to make rules necessary and appropriate to the accomplishment of the county institution districts' duty "to provide in foster family homes or child caring institutions adequate substitute care for any child in need of such care." 62 P.S. § 2305 (1968). The Service in following these regulations was also acting within its proper authority.

■ Appellants claim that the existence of statutes requiring judicial action in other instances of alterations of parental rights suggests a legislative policy of requiring a judicial hearing prior to the transfer of custody with parental consent. We find this argument unconvincing. The provisions cited by appellants are designed for purposes clearly distinguishable from the non-final, consensual transfer of custody achieved by the execution of a "placement agreement." The existence of these statutes for vastly different objectives does not establish that the Service's procedure is inconsistent with legislative intent.[3]

3. The provisions referred to by appellants are the Juvenile Act, Act of December 6, 1972, P.L. 1464, No. 333, § 1 et seq., 11 P.S. § 50–101 et seq. (Supp.1974), and the Adoption Act, Act of July 24, 1970, P.L. 620, No. 208, art. III, §§ 301–03, 311–13, 1 P.S. §§ 301–03, 311–13 (Supp.1974). The Juvenile Act provides hearings for

■ Nor can we agree with appellants' argument that Pennsylvania case law prohibits the transfer of custody by parental agreement. Pennsylvania precedents merely provide that contracts for custody of children will not foreclose a court from making a contrary disposition in the best interests of the child. This doctrine does not support appellants' claim that "placement agreements" are void as against public policy. *Commonwealth ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 92, 66 A.2d 300, 304 (1949); *Commonwealth ex rel. Bankert v. Children's Services,* 224 Pa.Super. 556, 307 A.2d 411 (1973); *Commonwealth ex rel. Bachman v. Bradley,* 171 Pa.Super. 587, 91 A.2d 379 (1952); *Commonwealth ex rel. Brincher v. Bair,* 169 Pa.Super. 45, 82 A.2d 79 (1951); *Commonwealth ex rel. Berg v. The Catholic Bureau,* 167 Pa.Super. 514, 76 A.2d 427 (1950).

Appellants argue that even if the use of "placement agreements" is authorized by Pennsylvania law, such use nevertheless violates the due process clause of the federal constitution. Relying chiefly upon the decisions of the United States Supreme Court in *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) and *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), they argue that parents have a constitutionally protected interest in their children which may not be suspended without due process of law. They further assert that because the execution of a "placement agreement" transfers custody of the children to the service with parental consent without provision for a court hearing, the

children accused of committing a delinquent act as defined by the Act, or who are otherwise asserted to be in need of supervision due to the lack of adequate parental care or habitual and unjustified truancy from school.

Sections 301–03 of the Adoption Act provide procedures by which parents may "relinquish forever all parental rights and duties with respect to their child." Id. § 301, 1 P.S. § 301 (Supp. 1974). Sections 311–13 of the Adoption Act provide for the permanent and involuntary termination of all parental rights.

use of such agreements is constitutionally impermissable as a denial of due process of law.

■ While it is certainly true that parents have a constitutionally protected interest in their children, see, e. g., *Weinberger v. Wiesenfeld,* 420 U.S. 636, 637, 95 S. Ct. 1225, 1226, 43 L.Ed.2d 514 (1975) (dictum); *Stanley,* supra; appellants have failed to establish that the use of these "placement agreements" in any way deprives them of due process. This is not a case where parental rights are terminated without an opportunity for the parent to prove their suitability to retain custody of their children. Compare *Stanley,* supra, and *Armstrong,* supra. Instead, here the parents consent to the transfer of custody to the Service and on that basis the Service undertakes the care of their children. Parents are told in clear language that conditions for the return of their children are "subject to the approval of [the Service]." Moreover, it is apparent that they give up no right to a judicial determination of their rights to custody of their children. The agreement clearly provides that in the event of any disagreement on the conditions for return of the child, the dispute will be "reviewed" by the Juvenile Court.

■ We simply cannot find in the consensual transfer of custody of children to the Service any deprivation of parental rights without due process of law.[4] Appellants having failed to plead a cause of action, the chancellor

4. Appellants assert in their supplemental brief that the class was deprived of its due-process rights by the Service's use of coercion in obtaining parental consent to the transfers of custody. We have reviewed the complaint and, although the complaint is not altogether clear, we conclude that this issue was not raised. This was also apparently the view of the chancellor. Our conclusion is fortified by appellants' assertion in their first brief that the "form [of the agreements] and the lack of judicial scrutiny" are the "core" of appellants' challenge. Issues not presented below may not be raised upon appeal. *In re Sanders Children,* 454 Pa. 350, 353 n. 6, 312 A.2d 414 n. 6 (1973).

and the court en banc correctly sustained the preliminary objections and dismissed the class action.

Decree affirmed. Each party to pay own costs.

NIX, J., filed a dissenting opinion in which MANDERINO, J., joined.

NIX, Justice (dissenting).

I dissent because I believe the majority confuses the concept of foster care with that of custody or guardianship. I have no disagreement with Regulation 3231(d) which provides for the transfer for foster care from the natural parents to the Service without the necessity of a judicial hearing where there is an agreement between the parties. This conclusion, however, does not mandate the result suggested by the majority which requires the natural parents to initiate action and to sustain the burden of proof in any subsequent proceeding for the purpose of having the child returned to their care.

Regulation 3231(d), by clear and unambiguous language, distinguishes between foster care and the legal concepts of custody and guardianship. While it permits a consensual transfer for purposes of foster care, it requires a petition to the Juvenile Court where a change of custody or guardianship is sought. I do not believe, under the terms of this Regulation, that the "placement agreement" confers custody upon the agency, but rather permits the agency to provide foster care during the period of time that the parties consent to the arrangement.

The state's right to intrude upon the household and uproot a child from its natural ties must be predicated either on a finding of the delinquency of that child or a determination that the minor is suffering deprivation in his present surroundings. See Juvenile Act, Act of December 6, 1972, P.L. 1464, No. 333, § 24 and § 25; 11 P. S. § 50–321 and § 50–322 (Supp.1974–75). The record

fails to indicate any facts that would suggest that either of these conditions existed at the time the parents agreed to allow the Service to have control over the child for the purpose of foster care. Where parents, because of an unexpected emergency, are required to seek the aid of an agency because of their concern for the best interest of a child, these parents should not be penalized because of this interest by being required to initiate court action and to sustain a burden of proof in a suit for custody.

The rule of law that will evolve from the present position of the majority will cause parents who love their children and seek only their best interest to hesitate to seek, in times of need, aid from agencies such as the one involved for fear that they would be relinquishing a right to the care, custody, love and affection of their child even though temporary help may be needed. We therefore would, by this ruling, remove an alternative for those in need of temporary help, and frustrate the basic objective of facilitating assistance for those who seek the best interest of their child during periods of emergency.

Furthermore, public policy dictates that the Service should have the burden of initiating any legal proceeding to determine custody and should bear the burden of establishing the unfitness of the parents to perform the parental role.[1] This Commonwealth has always recognized a strong public policy to maintain the integrity of the family unit which, in my judgment, is ignored by the ruling of the majority today. See Juvenile Act, supra, § 1(b)(1); 11 P.S. § 50–101(b)(1). In many instances those persons who, by circumstances, are forced to seek such assistance are the uneducated, the deprived and the unsophisticated. To require them to seek out legal as-

1. The Courts of Pennsylvania have required governmental agencies to prove unfitness when proceeding under the Juvenile Act. See Levine, Caveat Parens: A Demystification of the Child Protection System, 35 Pitt.L.Rev. 1, 32 (1973).

sistance and to sustain the cost of litigation is contrary to reason and in my judgment provides a most undesirable result.

MANDERINO, J., joins in this dissent.