372 A.2d 721

**T. C. R. REALTY, INC., Appellant,**

**v.**

**J. Samuel COX and Rose Cox, his wife.**

Supreme Court of Pennsylvania.

Argued July 2, 1975.

Decided April 28, 1977.

Dissenting Opinion May 4, 1977.

332

David M. Priselac, McKeesport, for appellant.

Richard S. Crone, Crone & Zittrain, Pittsburgh, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION

NIX, Justice.

This is an appeal from a decree of the Chancellor dismissing a complaint in equity filed by appellant, T. C. R. Realty, Inc., seeking specific performance of a written option agreement for the sale of a parcel of land and damages for an alleged breach thereof. The dismissal of the complaint was precipitated by appellant's refusal to supply certain information to appellees in response to their [appellees'] depositions of appellant as directed by the Chancellor. Although the lawsuit has been unnecessarily complicated by a long and involved procedural and factual history, the immediate precise issue raised rests upon a determination of the propriety of permitting a counterclaim seeking injunctive relief and damages under the theories of malicious use and abuse of process in response to appellant's complaint in equity. For reasons which will be set forth hereinafter, we hold that the Chancellor erred in dismissing appellant's complaint and order that the complaint be reinstated and that the cause be remanded to the court below for further proceedings consistent herewith.

This action was commenced on January 11, 1974, by the filing of a praecipe for a writ of summons in equity by appellant against J. Samuel and Rose Cox, his wife, requesting specific performance of, and damages for an alleged breach of, a written option agreement for the sale of a parcel of real estate located in McCandless Township, Allegheny County. Subsequently, an amended

complaint [1] was filed alleging that on or about June 16, 1972, appellees gave to a Herbert Willis a written option to purchase the land in question. It was further averred that the aforesaid option was assigned to the instant appellant by a written agreement dated August 15, 1972.

In response to the amended complaint, appellees filed an answer, new matter and a counterclaim. On March 21, 1974, appellant filed preliminary objections to the appellees' new matter and counterclaim which were subsequently dismissed by a court en banc with leave to appellant to file a reply to appellees' new matter and counterclaim within 20 days from the date of that order. A reply was timely filed and the issue raised by the pleadings, excluding the counterclaim, centered around the question as to whether Clause 9 of the option agreement of June 16, 1972, had been complied with. [2]

Following the filing of the reply by appellant, the appellees aggressively pursued a course of discovery in an effort to establish the averments set forth in their counterclaim. In essence the counterclaim asserted that appellant and his agents had engaged in a series of vexatious lawsuits against appellees in a deliberate effort to so "harass" and "badger" them as to force the sale of the property in question to appellant at a price far below its true value. During the discovery process, appellees' filed a motion with the court for sanctions because of appellant's failure to supply certain requested information.

1. Contrary to the dictates of Pa.R.C.P. 1027 made applicable to actions in equity by Rule 1501, appellant failed to serve a copy of this praecipe on appellees. On January 25, 1974, appellees, without waiting for service of the writ of summons, caused a rule to file a complaint to issue on appellant. Thereupon appellant filed a complaint on February 15, 1974, followed by an amended complaint on February 19, 1974.

2. Clause 9 provides in pertinent part:
"If Optionee shall fail to make settlement as herein provided, or should Optionee violate or fail to fulfill or perform any of the terms or conditions of this Agreement, then in that case . . . the Optionors shall be released from all liability or obligation and this Agreement shall become null and void."

On November 4, 1974, in response to this motion, the Chancellor entered the following order:

". . . that plaintiff file with this Court and serve upon defendants' counsel copies of all documents and written responses to all information specifically set forth in the foregoing Motion, all within ten days from the date hereof; in default of which plaintiff's action will be dismissed with prejudice, leaving only defendants' counterclaim to be tried."

This order was subsequently amended "to require compliance on or before November 25, 1974." On November 26, 1974, after concluding that appellant could or would not comply with its earlier order, the Chancellor dismissed appellant's action with prejudice and ordered the cause to trial on appellees' counterclaim. It is this action from which appellant now seeks relief.[3]

■ Before addressing the merits of the instant appeal we must first determine whether the appeal from the decree of November 26, 1974, is properly before us at this time. Restated, the issue is whether a sanction order dismissing plaintiff-appellant's entire case with prejudice imposed under Rule 4019 effectively "puts him out of court," even though the defendant's counterclaim remains to be tried. Although neither party has specifically questioned the jurisdiction of this Court in this matter, the mere agreement of the parties will not vest jurisdiction where it otherwise would not be. *Stadler v. Mt. Oliver Borough*, 373 Pa. 316, 318, 95 A.2d 776, 777

---

3. The decree of November 26, 1974 provides:
 "AND NOW, to-wit, this 26th day of November, 1974, it appearing to the Court that its Order of November 4, 1974, as amended by its Order of November 12, 1974, has not been complied with as evidenced by the stipulation of Counsel dated November 25, 1974, it is ordered, adjudged and decreed that Plaintiff's action be and the same hereby is dismissed with prejudice, the lis pendens created thereby being lifted, leaving only Defendants counterclaim to be tried, commencing January 8, 1975 9:30 a. m.
 By the Court"

(1953); *Monnia's Estate*, 270 Pa. 367, 369, 113 A. 550, 551 (1921).

It is fundamental law in this Commonwealth that an appeal will lie only from final orders, unless otherwise expressly permitted by statute. *Caplan v. Keystone Weaving Mill*, 431 Pa. 407, 246 A.2d 384 (1968); *Stadler v. Mt. Oliver Borough, supra.* Prior to July 1, 1976, the Appellate Court Jurisdiction Act of 1970, July 31, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202(4) (Supp.1976–77) provided for exclusive jurisdiction in this Court from "final orders of the courts of common pleas" in actions or proceedings in equity, with various enumerated exceptions.[4] In ascertaining what is a "final order," we have looked beyond the technical effect of the adjudication to its practical ramifications. *Bell v. Consumer Discount Company*, 465 Pa. 225, 348 A.2d 734 (1975). We have variously defined a final order as one which ends the litigation, or alternatively disposes of the entire case. *Piltzer v. Independence Savings and Loan Association*, 456 Pa. 402, 404, 319 A.2d 677, 678 (1974); *James Banda Inc. v. Virginia Manor Apartments, Inc.*, 451 Pa. 408, 409, 303 A.2d 925, 926 (1973). Conversely phrased, an order is interlocutory and not final unless it effectively puts the litigant "out of court." *Ventura v. Skylark Motel, Inc.*, 431 Pa. 459, 463, 246 A.2d 353, 355 (1968). In *Marino Estate*, 440 Pa. 492, 494, 269 A.2d 645, 646 (1969), we said that an order is not interlocutory if it precludes a party from presenting the merits of his claim to the lower court. As a result of the dismissal with prejudice of appellant's claim, appellant is precluded from doing precisely that. Although he is technically not "out of court" since he is obliged to remain to defend against the counterclaim, the practical ramification of the decree is to completely deprive the litigant of his day in court so far as his claim is concerned. *See Safety T.*

---

4. This provision was suspended July 1, 1976. *See* Pa.R.App.P. 702(b).

*Corp. v. Hoffman T. Co., Inc.,* 458 Pa. 102, 329 A.2d 834 (1974). We have often held that an order dismissing certain aspects of an action is final even though certain other aspects may survive the order. In *Bell v. Beneficial Consumer Discount, supra,* we held that an order denying class action status possessed sufficiently practical aspects of finality to make it appealable even though the named plaintiffs in the case could further pursue the action and the ousted members could bring separate individual actions. *See also, Lee v. Child Care Services,* 461 Pa. 641, 337 A.2d 586 (1975). In *Brandywine Joint Area School Authority v. Van Corp., Inc.,* 426 Pa. 448, 451, 233 A.2d 240, 241 (1967), we permitted an appeal from an order sustaining preliminary objections which dismissed a thirty party complaint.

> "We conclude that while an order overruling preliminary objections to an additional party complaint is interlocutory, an order granting such objections and dismissing the complaint is final and appealable. Although the plaintiff in the additional party complaint may have a further cause of action against the defendant in the additional party complaint subsequent to the resolution of the basic litigation, *he is precluded in the basic litigation from determining his rights vis-a-vis the additional defendant in the litigation.*" (emphasis added)

In *Goldman v. McShain,* 432 Pa. 61, 247 A.2d 455 (1967), we agreed that an order transferring an action from equity to the law side which effectively puts the litigant "out of court" as to his equitable cause of action is appealable even though the "litigant so affected can carry his banner into another court on another theory." *Id.* at 65, 247 A.2d at 457.

In this posture it cannot be questioned that the decree imposing the sanction of November 26, 1974, effectively terminated the action instituted by appellant in its complaint in equity and is therefore final for the purposes of

appellate review. While appellant is still obliged to defend against a counterclaim the issues raised by it in its complaint have now been finally determined by the court below.

Turning to the merits of this appeal we must address the question of whether the learned Chancellor abused his discretion in dismissing appellant's complaint with prejudice for its failure to respond to the questions propounded.[5] Since we believe that a resolution ultimately turns upon the propriety of the area of inquiry these questions were designed to pursue, we need not consider the other objections raised by appellant to the decree.[6]

It is axiomatic that an order of discovery to be valid must relate to the eliciting of information relevant to the pending lawsuit. As stated by this Court in *O'Brien v. O'Brien,* 362 Pa. 66, 70, 66 A.2d 309, 311 (1949):

It is axiomatic that a bill for discovery in aid of an action or a defense at law cannot be maintained if the action or the defense itself cannot be maintained; this is because a bill for discovery in aid of a claim at law is wholly an ancillary proceeding, and if the asserted claim is itself invalid a bill for discovery in support of it must necessarily fall on demurrer: *Holland v. Hallahan,* 211 Pa. 223, 226, 60 A. 735, 736; *Elk Brewing Co. v. Neubert,* 213 Pa. 171, 176, 62 A. 782, 783, 784.[7]

5. The general rule is that a sanction order imposed under Pa.R.C. P. 4019 is within the sound discretion of the Court. *Calderaio v. Ross,* 395 Pa. 196, 198–99, 150 A.2d 110, 111–12 (1959).

6. Appellant has raised numerous challenges to the November 26, 1974, decree including the assertions that the court acted sua sponte in violation of Rule 4019(a), failed to consider a less drastic and more appropriate sanction and embraced within its provisions a party not of record.

7. This reasoning is equally applicable where the underlying action has been brought in equity. *Cole v. Wells,* 406 Pa. 81, 87–8, 177 A.2d 77, 79–80 (1962); *Elk Brewing Co. v. Neubert,* 213 Pa. 171, 176, 62 A. 782, 783–4 (1906).

It is clear from this record that the information sought to be obtained from the order of discovery which was allegedly violated and which caused the issuance of the sanction related to the averments of appellees' counterclaim and was not relevant to the issues raised under appellant's complaint.[8] Therefore, a finding that the counterclaim was improperly joined in this action would require the conclusion that the information sought by way of discovery in support of the averments of the counterclaim was not relevant to a legitimate issue in the lawsuit. In such a case a refusal to supply such information could not support the sanction imposed here.

For clarity at this juncture it is necessary to relate the history of litigation which gave rise to the counterclaim. In substance, the counterclaim relates to four lawsuits, three of which preceded the institution of the instant action. The first was commenced on May 10, 1973, by a praecipe for a writ of summons in equity issued by Herbert Willis, the original optionor, which caused a lis pendens to be placed on the property in question.

On May 22, 1973, appellees filed a praecipe for a rule to file a complaint and thereafter, on June 12, 1973, the action was "nonprossed" for the failure of Willis to file a complaint. It is asserted that in bringing this action, Willis was acting as an agent of T. C. R. Realty, Inc. and Stephen C. Baytos, the president of T. C. R. Realty, Inc.

On the very next day, June 13, 1973, a praecipe for writ of summons in equity was filed on behalf of 88 Builders, Inc., again causing a lis pendens to be placed on the property. A complaint in the second action was filed only after appellees filed a rule requiring same to be filed. That matter was subsequently dismissed with

8. The Chancellor's recognition of this fact can be gleaned from the following excerpt from his opinion:
"In each instance defendants [appellees] were attempting to elicit information to show that all of these actions [the institution of various lawsuits] were perpetrated by the same cast of characters in different disguises."

prejudice when the plaintiff in that action failed to file a pre-trial statement as ordered by the court. As a result of this lawsuit a lis pendens remained on the property from June 13, 1973, when the action was instituted until December 17, 1973, when the order of dismissal was filed. It is again asserted that 88 Builders, Inc. was also acting as agent for T. C. R. Realty, Inc. and Stephen Baytos.

On June 22, 1973, during the pendency of the 88 Builders, Inc.'s action, a mechanics' lien was filed against appellees by Maltan Construction Company, Inc. Again a rule had to be filed requiring a complaint before a complaint was filed on October 1, 1973. Subsequently, appellees filed preliminary objections to the complaint in the nature of a demurrer. The matter was being held under advisement at the time of the filing of the counterclaim in the instant action.[9] Again it is asserted that Maltan Construction Company, Inc. instituted the action on behalf of and under the direction of T. C. R. Realty, Inc., and Stephen C. Baytos.

The fourth lawsuit complained of is the instant action which appellee contends is but a continuation of the scenario of vexatious litigation instituted by T. C. R. Realty, Inc., and its president, Baytos, in an effort to prevent their alienation of the property to other interested buyers and to force them to sell their property to appellant for a deflated price.

If in fact the allegations of the counterclaim can be established, the conduct of the appellant of course could not be condoned and may very well provide the basis for recovery.[10] However, at this point, the legitimacy of the assertions of the counterclaim are not before us. The

9. The opinion of the Chancellor states that the demurrer was sustained thereafter and no appeal was filed from that order.

10. Nothing stated herein is to be interpreted as preventing appellees from raising this claim in an independent action.

only question is whether the issues raised therein were properly introduced in the instant action.

■ Nor is this, as appellees argued, a review of the lower court's dismissal of appellant's preliminary objections to the counterclaim.[11] While it is true that the question of misjoinder was raised as one of the bases in support of appellant's preliminary objections, we are considering the question here only because it is now asserted that the sanction imposed as a result of the November 26, 1974, decree was improper because the questions which were not answered were not appropriate areas of inquiry in the lawsuit. The answer to this question is thus dependent upon whether the claims raised in the counterclaim were properly joined in response to appellant's complaint in equity for the enforcement of the option. If it were error to allow a counterclaim for malicious use or abuse of process in response to appellant's complaint then the information sought by way of discovery was irrelevant to a valid issue in the lawsuit properly raised by the complaint and the sanction imposed for failure to supply that information was not justified.

Prior to the Equity Rules of 1925, a defendant in equity could assert a claim against the plaintiff by a cross-bill where it related to the plaintiff's cause of action and did not introduce issues foreign to those encompassed in the original action. *Schomaker v. Schomaker*, 247 Pa. 444, 93 A. 460 (1915);

"While a cross-bill properly may introduce—'new facts and issues, they must relate to the subject matter of the original bill and must be so closely connected therewith as to constitute the cross-bill a mere auxiliary of

11. Although the counterclaim is still pending in the court below, the order overruling the preliminary objections in this case is interlocutory and not entitled to review at this time. *Caplan v. Keystone Weaving Mill*, 431 Pa. 407, 246 A.2d 384 (1968); *Reynolds Metal Company v. Berger*, 423 Pa. 360, 223 A.2d 855 (1966); *Naclod v. Naclod*, 402 Pa. 60, 166 A.2d 18 (1960).

the original or a dependency thereon; . . . questions which are entirely distinct from those presented in the original bill cannot be introduced by a cross-bill, although such questions be connected with the subject matter of the original bill' ". *Id.* at 447–8, 93 A.2d at 461.

After the abolishment of the cross-bill, former Equity Rule 52 continued to permit a defendant in equity to demand affirmative relief provided that it had a direct relation to the causes of action set forth in the bill. In this procedure the additional facts upon which the defendants' claim depended were set forth under the heading "new matter". However, both the cross-bill and the "new matter" restricted defendants' claims to matters that directly related to the subject matter of the original complaint. *Mass. Bonding and Insurance Company v. Johnston & Harder Inc., et al.,* 330 Pa. 336, 199 A. 216 (1938).

■ Today's practice is of course governed by Equity Rule 1510(a). Although this section renames the pleading "counterclaim" which is obviously more appropriate, there was no intention to expand the subject matter that could be raised in such a pleading. The clause in 1510(a) "which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose" continues the prior requirement that the asserted claim must bear a "direct relation" to issues raised by plaintiff. Mr. Justice (now Mr. Chief Justice) EAGEN reaffirmed prior practice under Rule 1510(a) in *Brenner v. Sukenik,* 410 Pa. 324, 189 A.2d 246 (1963).

In the instant case, the plaintiff could have validly objected to the sufficiency of the defendant's counterclaim with respect to the savings account. A counterclaim to a complaint in equity may only be pleaded to a cause of action which arises from the same transaction

or occurrence from which plaintiff's cause of action arose. Pa.R.C.P. 1510; Goodrich-Amram, § 1510(a); *Schomaker v. Schomaker*, 247 Pa. 444, 93 A. 460 (1915). Since the plaintiff's complaint was solely a cause of action for support, the counterclaim of the defendant regarding the true ownership of the savings account was not germane in that the wife-plaintiff could obtain support from the husband's property whether it was held by them as tenants by the entireties or whether the husband was the sole owner of the property: *Crane v. Crane*, 373 Pa. 1, 95 A.2d 199 (1953). *Id.* at 328–9, 189 A.2d at 248.

It is clear that the issues sought to be raised by appellees' counterclaim are not sufficiently related to appellant's cause of action set forth in his complaint to permit joinder in this instance. The appellant's complaint in equity sought recovery by way of specific performance and damages for appellees' alleged breach of an option agreement. The issues raised under that cause of action bear little if any relationship to appellees' contentions founded upon the torts of malicious use and abuse of process. While the bringing of the instant action by appellant is cited as one of the facts in support of his claim of vexatious litigation, this fact alone does not place appellees' claim within the ambit required by the phrase "arising from the same transaction or occurrence." In this context we find the reasoning of President Judge Kreider of the Court of Common Pleas of Dauphin County persuasive:

A defendant may plead as a counterclaim only a cause of action, whether equitable or legal, which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose . . . ."

Plaintiffs' cause of action arose from defendants' alleged violation of the restrictive covenants applicable

to defendants' premises, while the cause of action set forth in defendants' counterclaim is based on the mere fact that plaintiffs instituted the present proceedings against defendants to adjudicate the enforceability of the restrictions. Thus, defendants' counterclaim arises from the present legal proceeding, not from the same transactions or occurrences from which plaintiffs' cause of action arose. *Hershey Estates v. Magriney,* 52 D. & C.2d 570, 574 (1971).

If we were to accept appellees' view, then a complaint of malicious use or abuse of process could be joined by way of a counterclaim anytime the defendant contends that the initial proceeding was frivolous.[12] Such a result would require the plaintiff to present his case in chief, which would not involve the elements of the tort claim, e. g., malice, probable cause, improper motive, etc., and then to allow the defense in addition to the presentation of his evidence in rebuttal of plaintiff's case in chief, to interject additional and unrelated testimony to establish the claimed tort. Thereafter of course, the plaintiff would be required to introduce further evidence to meet that issue, thus probably completely obfuscating the basic issue which initially inspired the bringing of the lawsuit. Such a co-mingling of the plaintiff's claim and those of defendants' counterclaim would be likely to produce such confusion in the mind of the fact finder as to make the possibility of a just decision unlikely and increase the probability of a miscarriage of justice. *Selas*

12. The tort of malicious prosecution would not lie because the *"sine qua non"* of that cause of action is the favorable termination of the challenged action. *See Selas Corp. of Amer. v. Wilshire Oil Company of Texas,* 344 F.Supp. 357 (E.D. of Pa.1972). The reference to the instant suit in appellees' counterclaim was in support of his claim of abuse of process which arguably does not require that it be proven that the proceeding has terminated favorably. Prosser, Law of Torts, 4th Ed. Ch. 22, § 121, p. 856 et seq. *But see, Dumont T & R Corp. v. Franklin & Co.,* 397 Pa. 274, 154 A.2d 585 (1959); *Publix Drug Co. v. Breyer Ice Cream,* 347 Pa. 346, 32 A.2d 413 (1943).

*Corporation of America v. Wilshire Oil Co. of Texas,*
344 F.Supp. 357 (E.D.Pa.1972).

"We have no Pennsylvania cases dealing with the assertion of a malicious prosecution claim in a counterclaim. However, in *Knapp Engraving Co. v. Keystone Photo Engraving Corp.,* 1 A.D.2d 170, 148 N.Y.S.2d 635 (1956), Justice Botein said, at pages 637–638:

'While [defendant] alleges that plaintiff's instant action is baseless and invalid and brought in order to inflict intentional damage without justification, considerations of public policy require that this counterclaim be dismissed at this time. * * * Such a cause of action lowers the dam for a second mainstream of evidence, with its own bundle of facts and law, its own burden of proof and measure of damages, and might impede or divert the progress of the plaintiff's mainstream of evidence.' *Id.* at 359–60.

 It is difficult to conceive of any joinder which would be more likely to "make a shambles of controversies already sufficiently complex". *Rosemont Enterprises, Inc. v. Random House, Inc.,* 261 F.Supp. 691, 698 (S.D.N.Y.1966), than the one permitted by the Chancellor in this case. The resultant complex, diverse and extraneous issues would confound even the most astute trier of fact. We share appellees' concern for judicial economy and agree that a multiplicity of lawsuits by the same or related parties are to be avoided where possible. However, this concern can never rise above our primary obligation to dispense justice and this end cannot be achieved where we permit unrelated claims to become so entangled that comprehension is impossible. *Cf. Falsetti v. Local U. No. 2026 U. M. W. A.,* 400 Pa. 145, 161 A.2d 882 (1960).

We are therefore constrained to find that the Chancellor erred in permitting appellees to assert their claim based on the torts of malicious use and abuse of process

in the instant lawsuit.[13] Having so concluded, we hold that it was inappropriate to impose a sanction upon appellant for failure to respond to inquiries relating to the cause of action introduced by the counterclaim. We therefore reverse the decree, reinstate the complaint and remand the matter for further proceedings consistent herewith. This ruling does not prevent further discovery by the appellees with reference to any matters which may be germane in response to the issues raised in appellant's pleadings excluding the counterclaim.

It is so ordered.

Former Chief Justice JONES did not participate in the decision of this case.

EAGEN, C. J., and ROBERTS, J., dissent.

ROBERTS, Justice, dissenting.

I cannot agree with the majority that the counterclaim asserted in this action in equity does not arise "from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose." Pa.R.Civ.P. 1510. Appellant's complaint sought specific performance of an option to purchase real property. Appellees' counterclaim alleged that appellant had brought a series of vexatious lawsuits against appellees in an effort to force appellees to sell the property to appellant at a depressed price. Thus, both appellant's complaint and appellees' counterclaim arise out of the sale of the real property in question. Indeed, the facts asserted in the counterclaim could support the defense of "unclean hands."

13. Appellees ingeniously attempted to distinguish between the counts of the counterclaim which sets forth the alleged tortious conduct from what they chose to term a count in equity which seeks "a piercing of the corporate veil and an injunction against vexatious litigation." It is obvious that the so-called count in equity is no more than a request of the court to exercise its equitable powers to remedy the continuing alleged tortious violations.

Nor can I agree with the majority that the Chancellor is incapable of separating the issues raised in the counterclaim from appellant's claim. The Chancellor often is expected to sort out the many issues that may arise in complex litigation.

Accordingly, I dissent.