464 A.2d 333

In re Andre LOWRY and Jeffrey Lowry, minors.

Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.

In re Linda DIAZ, also known as Johanna Berceli, a minor.

Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.

In re Ronald ZIEGLER.

Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.

In re Kathleen BERGER, a minor.

Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.

In re Tracey MITCHELL, a minor.

Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.

In re Leonard BROOKS, a minor.

Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.

In re Snowley BROOKS, a minor.

Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.

In re Julie BRISON, a minor.

Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.

In re Heather BROOKS, a minor.

Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.

In re Sarah AYERS, a minor.

Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.

In re Lisa Ann ANGELO, a minor.

Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.

**In re Carmen Ann JONES, a minor.**

**Appeal of CHILDREN AND YOUTH SERVICES OF
ALLEGHENY COUNTY.**

**In re Joseph EVANGELISTA (Brown), a minor.**

**Appeal of CHILDREN AND YOUTH SERVICES OF
ALLEGHENY COUNTY.**

Superior Court of Pennsylvania.

Argued Feb. 23, 1983.

Filed July 8, 1983.

Reargument Denied Sept. 13, 1983.

Petition for Allowance of Appeal Granted Feb. 8, 1984.

308

James A. Esler, Assistant County Solicitor, Pittsburgh, for appellant.

Mark P. Cancilla, Pittsburgh, for appellees.

Before SPAETH, BROSKY and MONTEMURO, JJ.

SPAETH, Judge:

■ This case arises on thirteen appeals which have been consolidated. The appeals involve the disposition of children adjudicated dependent under The Juvenile Act, Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1978, 42 Pa.C.S.A. § 6301 *et seq.* The lower court ordered the children placed in the custody of foster parents, and provided in its order that the placement should be "under the supervision of Children and Youth Services of Allegheny County," and, further, that Children and Youth Services of Allegheny County Institution District were to pay the foster parents "the current board rate per diem for foster home care." It has not been argued, either that the children should not have been adjudicated dependent, or that they should not have been ordered placed in foster homes. The issue is whether the lower court was authorized by The Juvenile Act to order a public agency, such as Children and Youth Services or the County Institution District, to pay for

the placement. We hold that a court may not order a public agency to supervise and pay for the placement of a dependent child in a foster home unless the home has been approved pursuant to the regulations of the Pennsylvania Department of Public Welfare applicable to foster homes. Here the record fails to disclose that the foster homes have been so approved. We therefore remand for further proceedings.

In each of the thirteen appeals before us the disposition is essentially the same, and all of the appeals have essentially the same procedural history. Rather than recite the history of each appeal, the history of the appeal involving Kathleen Berger will be recited as illustrative.

On March 27, 1979, a case worker representing Children and Youth Services of Allegheny County filed a petition with the lower court, representing that Kathleen was about 15 years old and was a dependent child in that she was without proper parental care or control as necessary for her physical and mental health.[1] On April 18, 1979, the lower court adjudicated Kathleen a dependent child. After two intervening placements, which are not pertinent to our present discussion, the lower court, on April 8, 1981, after a hearing, ordered Kathleen "placed in the custody" of one Charles R. Reis, "under the supervision of Children and Youth Services of Allegheny County." After reciting that "[t]his placement [had] been recommended to the Court by Children and Youth Services of Allegheny County as being in the best interest" of Kathleen, the court's order continued by directing that Children and Youth Services and the Allegheny County Institution District should "pay to Mr. Charles R. Reis the current board rate per diem for foster home care of [Kathleen], effective as of April 8, 1981, and so long as [Kathleen] remains in the custody and care of Mr. Charles R. Reis."

---

1. The Juvenile Act provides several definitions of a "dependent child." One definition is a child who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S.A. § 6302.

In its opinion the lower court explains that it ordered Kathleen placed with Mr. Reis on the basis of testimony by a Children and Youth Services caseworker: "The caseworker assured the Court that the prospective placement was in Kathleen's best interest, that no other placement was more appropriate, and significantly, that she had developed close attachments to the Reis family." Slip op. at 2. The lower court goes on to say that "[it] declined, however, to await the completion of the home study before ordering [Children and Youth Services] to support the placement, instead directing the agency to pay the current foster care board rate effective April 8, 1981, the date of the placement." *Id.* at 3.

The propriety of the lower court's adjudication of Kathleen as a dependent child is not challenged. Neither is the court's decision to order her placed in a foster home. As appellant, Children and Youth Services only argues that the lower court erred in directing it to make foster home payments when it had not evaluated and approved the Reis home as being in compliance with Pennsylvania Department of Public Welfare Regulations.[2]

–1–

The Juvenile Act provides that if, after petition and hearing, a child is found to be a dependent child, the court may order any of certain specified dispositions, as "best suited to the protection and physical, mental, and moral welfare of the child." 42 Pa.C.S.A. § 6351(a). The specified dispositions are as follows:

(1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limita-

**2.** Children and Youth Services also makes other arguments: whether the lower court was correct in directing foster home payments "when said placement did not meet minimum levels of competency as established by State and County Regulations," Brief for Appellant at 3; whether the lower court was correct in ordering payments "retroactive to a date prior to that on which the dependent child came before the court," *id.;* and whether the lower court was correct in ordering payments "when the foster family did not wish to participate in County funding and the attendant supervision," *id.* The issues raised by these arguments are not common to all of the appeals, and given our disposition of the issue that is common, it is unnecessary to consider them.

tions as the court prescribes, including supervision as directed by the court for the protection of the child.

(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:

(i) Any individual resident within or without this Commonwealth who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.

(ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.

(iii) A public agency authorized by law to receive and provide care for the child.

*Id.*

At first glance it might appear that here the lower court has made a disposition within subsection (i) of Section 6351(a)(2): the court's order states that custody of Kathleen has been transferred to an individual, Charles R. Reis, and it is apparent from the order that this transfer is only temporary, and has been made on the recommendation of Children and Youth Services. Indeed, the lower court regarded its disposition as within subsection (i). Slip op. at 7. Closer examination will disclose, however, that this was error. For the lower court did not simply transfer temporary custody of Kathleen to Mr. Reis. Instead, the court directed that Mr. Reis's temporary custody of Kathleen should be "under the supervision of Children and Youth Services." The underlying responsibility for Kathleen's welfare was thus imposed upon Children and Youth Services. If, for example, Mr. Reis were to mistreat Kathleen, it would be the responsibility of Children and Youth Services to inform the court of that fact and to recommend to the court whether physical custody of Kathleen should be transferred to someone else.

■ Accordingly, the lower court's disposition of Kathleen may be characterized in one of two ways: as a disposition within *both* subsection (i) ("custody to ... [a]ny individual") *and* subsection (iii) ("custody to ... [a] public agency"); or as a disposition *only* within subsection (iii). The latter characterization is perhaps preferable. When, as happened to Kathleen, a court on the petition of a public agency such as Children and Youth Services adjudicates a child dependent and orders the child taken from the custody of her parents and placed elsewhere, perhaps in a child shelter, perhaps in a foster home, "under the supervision" of the agency, the practical effect is to give the agency custody of the child. The shelter or foster home, to be sure, has *physical* custody; but since the agency has been ordered to supervise that custody, *legal* custody is with the agency. It is not important, however, which characterization is regarded as preferable. If an order directing a public agency to supervise a placement in a foster home doesn't result in the disposition being only within subsection (iii), it at least results in it being within both subsection (i) and subsection (iii).

–2–

Very few orders are of greater consequence than orders directing that children be taken from their parents and placed in foster homes. For the children's lives lie before them. A foster home may provide the security and sense of direction that will enable the children to lead responsible, productive lives. But the home may also ensure that the children's lives will be lives of misery. For instead of being cared for, the children may be exploited and abused. We shouldn't suppose that *Nicholas Nickleby* couldn't be written today. *See* New York Times, March 27, 1983, at 23 (detailing instances of foster child abuse leading to consent decree specifying foster children's rights in *G.L., et al. v. Zumwalt, et al.*, 564 F.Supp. 1030 (W.D.Mo.1983)). It is therefore to be expected that the Legislature would concern itself with the protection of children. We have already

referred to The Juvenile Act, *supra,* 42 Pa.C.S.A. § 6301 *et seq.,* and have cited its injunction that if a court finds a child to be a dependent child, it is to order such disposition of the child as is "best suited to the protection and physical, mental, and moral welfare of the child." 42 Pa.C.S.A. § 6351(a). *And see In the Interest of S.M.S.,* 284 Pa.Super. 9, 424 A.2d 1365 (1981); *In the Interest of K.B.,* 276 Pa.Super. 380, 419 A.2d 508 (1980); *In the Interest of Black,* 273 Pa.Super. 536, 417 A.2d 1178 (1980); *Stapleton v. Dauphin County Child Services,* 228 Pa.Super. 371, 324 A.2d 562 (1975). The Legislature has further provided by the Act of June 24, 1937, P.L. 2017, art. IV, § 405, as amended, 62 P.S. § 2305, that:

> The local authorities of any institution district shall have the power, and for the purpose of protecting and promoting the welfare of children and youth, it shall be their duty to provide those child welfare services designed to keep children in their own home, prevent neglect, abuse and exploitation, help overcome problems that result in dependency, neglect or delinquency, to provide in foster family homes or child caring institutions adequate substitute care for any child in need of such care and, upon the request of the court, to provide such service and care for children and youth who have been adjudicated dependent, neglected or delinquent.

> No child under the age of sixteen years shall, unless he is mentally or physically handicapped, and no other care is available for him, be admitted to, or maintained in, an institution conducted by the local authorities other than a hospital or sanitarium.

In addition, the Legislature has provided in The Public Welfare Code, Act of June 13, 1967, P.L. 31, No. 21, art. 1, § 101, *et seq.,* 62 P.S. § 101, *et seq.,* that the Department of Public Welfare "shall have supervision over ... [a]ll children's institutions within this Commonwealth ...." 62 P.S. § 902(3). The Code defines "children's institutions" as meaning

any incorporated or unincorporated organization, society, corporation or agency, public or private, which may receive or care for children, or place them in foster family homes, either at board, wages. or free; or any individual who, for hire, gain or reward, receives for care a child, unless he is related to such child by blood or marriage within the second degree; or any individual, not in the regular employ of the court or of an organization, society, association or agency, duly certified by the department, who in any manner becomes a party to the placing of children in foster homes, unless he is related to such children by blood or marriage within the second degree, or is the duly appointed guardian thereof.

62 P.S. § 901.

As a children's institution, Children and Youth Services of Allegheny County is subject to the supervision of the Department of Public Welfare. As will appear, this fact has consequences critical to our decision of the appeals now before us.

The Legislature has charged that the Department of Public Welfare, in exercising its supervisory power over children's institutions, "shall. assure the availability and equitable provision of adequate public child welfare services for all children who need them regardless of religion, race, settlement, residence or economic or social status." 62 P.S. § 701. Toward this end, the Legislature has provided that:

The department shall make and enforce all rules and regulations necessary and appropriate to the proper accomplishment of the child welfare duties and functions vested by law in the county institution districts or their successors. All rules and regulations which the department is authorized by this section to make with respect to the duties and functions of the county institution districts or their. successors shall be binding upon them.

62 P.S. § 703.

Pursuant to this grant of power, the Department of Public Welfare has promulgated regulations governing the administration of county children and youth services, including

services designed to "provide court-ordered care or supervision to alleged or adjudicated dependent or delinquent children." 55 Pa.Code § 3130.1. Regulation 3130.39 limits the services and facilities that may be used by county agencies:

> (a) A service or facility used by the county agency to serve children must be licensed or approved by the appropriate State agency if that service or facility is subject to licensure or approval.
>
> (b) All facilities used by the county agency for the residential care of children must meet basic State and local requirements for the health and safety of children.
>
> (c) Children who are dependent and not also adjudicated delinquent may not be placed in a facility operated for the benefit of delinquent children.

55 Pa.Code § 3130.39.

Regulations 3700.1–3700.73 provide for a comprehensive evaluation process for determining the suitability of foster homes. The regulations include requirements concerning health, § 3700.51, safety, § 3700.67, and necessary facilities, § 3700.66. The authority to inspect and approve foster homes is delegated to an approved foster family care agency, 55 Pa.Code § 3700.61, which is defined as "[a] public or private agency which recruits, approves, and supervises foster family homes and places children in foster family homes," 55 Pa.Code § 3700.4. The purpose of these regulations is "to reduce risk to children in placement; to protect their health, safety, and human rights ... and to establish minimum requirements to be applied by foster family care agencies when approving and supervising foster family homes." 55 Pa.Code § 3700.2. Regulation 3700.68 prohibits an agency from placing children in a foster home that has not been approved:

> (b) Foster parent applicants whose homes have not been approved on October 1, 1982, must meet the requirements of §§ 3700.62–3700.67 (relating to requirements for FFCA [foster family care agency] approval of foster family homes) before any children may be placed in their homes.

(c) Foster family homes already approved by an FFCA on October 1, 1982, must be inspected and comply with the requirements of §§ 3700.62–3700.67 (relating to requirements for FFCA approval of foster family homes) at the time of their next annual reevaluation.

55 Pa.Code § 3700.68(b), (c).

*See also.* 55 Pa.Code § 330.39.

If an agency fails to comply with "the regulations prescribing minimum child welfare services or minimum standards of performance," the Department of Public Welfare may, after hearing, "take[ ] charge of, and direct[ ] the operation of the child welfare services of a county institution district," in which event "the county shall be charged and shall pay for such services." 62 P.S. § 708 (Supp.1982–83).

It is therefore clear that Children and Youth Services would have had no authority on its own initiative to place a dependent child, such as Kathleen, in a foster home unless that home had been inspected by a foster family care agency and had been approved by the agency as in compliance with the regulations determining the suitability of a foster home. From this it follows that the lower court had no authority to order Children and Youth Services to supervise the placement of a dependent child in a foster home that had not been inspected and approved by a foster family care agency, and to order that Children and Youth Services and the County Institution District should pay for the placement. In other words, the court was not entitled to direct Children and Youth Services to disobey the Department of Public Welfare regulations, and to subject itself to being taken over by the Department. The court was entitled to order Children and Youth Services to supervise the placement of Kathleen with Mr. Reis, and to order Children and Youth Services and the County Institution District to pay for the placement, if such an order was in Kathleen's best interest, but only upon proof that Mr. Reis's home had

been inspected and approved by a foster family care agency.

–3–

The lower court was aware of "Department of Public Welfare regulations prohibit[ing] [Children and Youth Services'] participation in the subsidy of this [*i.e.,*' Mr. Reis's] foster family before a home` evaluation has been completed." Slip op. at 5. Also, the court acknowledged "[t]he clear inference ... that this Court is bound by these strictures, and, therefore, has abused its discretion in fashioning the order from which the agency seeks relief." *Id.* However, the court expressed the opinion that there was no authority for the proposition that it was bound by the Department's regulations. *Id.* The court stated that it had questioned Mr. Reis, the Children and Youth Services caseworker, and Kathleen, and that "[o]n the basis of the evidence adduced, the Court is convinced that this placement is in Kathleen's best interest." Slip op. at 6.

 The difficulty with this reasoning is that, contrary to the lower court's opinion, the court was, and is, bound by the Department of Public Welfare regulations; the court was no more entitled to disobey those regulations than was Children and Youth Services. For regulations promulgated pursuant to a grant of legislative power by the Legislature have the force of law. *Uniontown Area School District v. Pa. Human Relations Commission,* 455 Pa. 52, 76–7, 313 A.2d 156, 169 (1973) (collecting cases). Here, the regulations governing placement in and supervision of foster homes by county agencies were promulgated pursuant to the legislative power granted by the Legislature to the Department of Public Welfare to "regulate the care of children entrusted to foster family care ...." *Child Care Services v. Commonwealth Department of Public Welfare,* 35 Pa.Commw. 81, 86, 385 A.2d 593, 595 (1978). *See also, Lee v. Child Care Service Delaware County Institu-*

*tion District,* 461 Pa. 641, 337 A.2d 586 app. dismd. 423 U.S. 919, 96 S.Ct. 258, 46 L.Ed.2d 245 (1975). The regulations, therefore, had the force of law, and bound both Children and Youth Services and the lower court.

The lower court could not avoid the Department of Public Welfare regulations by concluding that on the evidence before it, Kathleen's placement with Mr. Reis was in her best interest. A placement in violation of law cannot be in a child's best interest. To be sure, the fact that a foster home *is* in compliance with the Department's regulations is not *by itself* any guarantee that placement in the home will be in the child's best interest. It may well be that even though the home is in compliance with regulations, some disposition other than placement in the home will better serve the child's best interest. In other words, compliance with regulations is not a *sufficient* condition that a placement of a dependent child in a foster home under the supervision of a children's institution—such as Children and Youth Services—is in the child's best interests; but it is a *necessary* condition.

We are sympathetic with the lower court's decision "[not] to await the completion of the home study before ordering [Children and Youth Services] to support the placement...." Slip op. at 3. For we recognize the pressures that may bear upon a court to transfer a dependent child from the child's parents or a shelter into a foster home. It is only natural that a conscientious court, endeavoring to make prompt dispositions of dependent children, will become impatient with what may seem unnecessary and unjustified bureaucratic delays. If in fact placements are being unduly delayed because the foster family care agency is slow in approving foster homes, the agency should be compelled to do its work more promptly. It is not our function, and it would be inappropriate for us, to suggest how this might be achieved. But the remedy cannot be to short-cut the law, which is clear that before a placement

may be made under the supervision of a children's institution, the foster home must have been approved by a foster family care agency as in compliance with Department of Public Welfare regulations.

■ Finally, we have not overlooked the lower court's reference in its opinion to the practice of Children and Youth Services, in other cases,

> in recommending a particular foster placement, utilizing that family as a foster placement resource, yet, unaccountably, disavowing the clear obligation to assist the children in placement by paying the authorized board rate to their foster parent(s). Typically, the explanation offered is that the home evaluation has not been made, is not complete, or the home fails to meet certain minimal requirements for a CYS subsidy.

Slip op. at 4.

We agree with the lower court that such a practice is "unaccountabl[e]." As we have already discussed, Children and Youth Services is prohibited by Department of Public Welfare regulations from placing dependent children in foster homes that have not been approved by a foster family care agency as in compliance with Department regulations. Children and Youth Services may not avoid this prohibition by recommending to the court that *it* place the children in an unapproved home. If Children and Youth Services recommends a placement, it must be able to demonstrate to the court that the home is an approved home. Here Children and Youth Services has failed to fulfill that responsibility; in none of the cases before us does the record disclose that the placement that Children and Youth Services has been ordered to supervise is in an approved home. The cases will therefore be remanded to the lower court so that the record in each may be reopened and further proceedings consistent with this opinion may be conducted.

SO ORDERED.