J-A18024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF ROBERT M. MUMMA, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: BARBARA M. MUMMA | |
| Appellant | No. 1003 MDA 2013 |

Appeal from the Order Entered on May 10, 2013
In the Court of Common Pleas of Cumberland County
Orphans' Court at No.: 21-86-398

| | |
|---|---|
| IN RE: ESTATE OF ROBERT M. MUMMA, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: ROBERT M. MUMMA, II | |
| | No. 1027 MDA 2013 |

Appeal from the Order Entered on May 10, 2013
In the Court of Common Pleas of Cumberland County
Orphans' Court at No.: 21-86-398

| | |
|---|---|
| IN RE: ESTATE OF ROBERT M. MUMMA, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF : ROBERT M. MUMMA, II | |
| | No. 1028 MDA 2013 |

Appeal from the Order Entered on May 10, 2013

In the Court of Common Pleas of Cumberland County
Orphans' Court at No.: 21-86-398

| | |
|---|---|
| IN RE: ESTATE OF ROBERT M. MUMMA, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: ROBERT M. MUMMA II | |
| Appellant | No. 1222 MDA 2013 |

Appeal from the Order Entered on June 7, 2013
In the Court of Common Pleas of Cumberland County
Orphans' Court at No.: 21-86-398

BEFORE:  LAZARUS, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.:                **FILED OCTOBER 24, 2014**

Appellants Robert Mumma, II ("Mumma"), and Barbara Mumma collectively challenge three orphans' court orders pertaining to the administration of the estate of Robert M. Mumma ("Testator"). The orders in question do not reflect a final accounting of the estate and testamentary trusts, but rather are interim orders. Specifically, two May 10, 2013 orders authorized Lisa M. Morgan ("Morgan"), in her role as executrix of Testator's estate and administrator of the marital and residuary trusts provided for therein, to liquidate certain real estate holdings for the purpose of distributing the proceeds equally amongst the four remaining beneficiaries of the trusts. The June 7, 2013 order appealed only by Mumma reflected the orphans' court's refusal to vacate its earlier July 30, 2012 order authorizing

- 2 -

Morgan to liquidate certain life insurance policies for inclusion in, and

ultimate distribution from, the estate to the remaining beneficiaries. After

careful review of the record and the arguments of the parties, we are

constrained to conclude that we lack jurisdiction to consider appeals from

any of these orders at this juncture. The orders in question are interlocutory

orders that do not qualify for any exception to the general rule that this

Court will consider only appeals from orders that dispose of all issues as to

all parties to the underlying litigation. Consequently, we must quash the

instant appeals and remand.

It would be impracticable to provide a comprehensive account of the

history of the disputes underlying this case, which span nearly thirty years

since Testator passed on in 1986.[1] We find sufficient the orphans' court's

recounting of the events and proceedings relevant to the instant appeal, as

follows:

> On January 6, 1999, Mumma petitioned th[e orphans'] court for
> an accounting of the estate of his father, Testator, who died
> testate on April 12, 1986. Testator's will and the codicil thereto
> were probated on June 5, 1986. The will appoints Mrs. Barbara
> McK. Mumma ("Widow"), Testator's widow, now also deceased,
> and Morgan, Testator's daughter, as executrices thereof and as

---

[1] The orphans' court has enumerated four prior instances in which Mumma appealed issues arising in this matter since 2005, three of which we quashed and a fourth in which we affirmed the orphans' court order in question. The orphans' court further notes that Mumma presently is embroiled in separate litigation in Florida concerning his late mother's estate. *See* Orphans' Court Opinion at 1 n.2. This summary is by no means exhaustive.

trustees of a marital trust and a residuary trust created thereunder.[2] Under the will, the presumptive remaindermen of the trusts, if they survive Widow, are Testator's children: petitioner Mumma, Linda M. Mumma ("Linda Mumma"), Barbara M. Mumma ("Barbara Mumma"), and Morgan. Testator bequeathed to his testamentary trustees an amount equal to fifty percent of his total gross estate to be held in trust exclusively for the benefit of Widow during her lifetime, the principal to be distributed to Testator's children upon Widow's death. In addition, Testator gave his residuary estate to his testamentary trustees to be held in trust exclusively for the benefit of Widow during her lifetime, the principal to be paid to Testator's children upon her death.

Widow and Morgan filed interim accounts of their acts and transactions as executrices and as trustees on August 9, 1991.

Mumma disclaimed his interest under the will in 1987. In 1989, former President Judge Harold E. Sheely of [the orphans'] court granted Mumma's motion to revoke his disclaimer. Robert M. Frey, Esq., who was appointed guardian *ad litem* for the minor persons interested in the estate in 1988, appealed the revocation of the disclaimer. The Superior Court ruled that Mr. Frey's representation of the estate with respect to the revocation of the disclaimer was beyond the scope of his limited appointment and therefore he lacked standing to appeal.

Mumma eventually asked for a complete accounting of the estate, including an accounting of the trusts in which he claimed an interest. Widow and Morgan claimed in response that they could not provide an accounting to Mumma because he did not have standing, and the issue of the revocation of his disclaimer had not been fully litigated.

---

[2] Because Morgan undisputedly is the trustee of both trusts, and it further is undisputed that the corpora of the trusts are ripe for distribution among their beneficiaries (this appeal involving only disputes pertaining to authority to distribute and the form of distribution), the distinction between the holdings of the respective trusts is immaterial to the analysis that follows. Consequently, we largely refer to the trusts collectively as such.

The position of the executrices/trustees was rejected by the [orphans'] court, and an accounting by the executrices/trustees was ordered on February 23, 2000.

An exhaustive further history of the estate, to the current date, is now available by way of a 130-page final auditor's report, filed August 7, 2013.

The first interim order referred to above, authorizing the sale of realty known as the UPS Property ["Order I"], had its inception in a Petition to Authorize Plan of Liquidation filed on April 5, 2012, by Morgan, who had been appointed by her father as executrix and trustee of [the] marital and residuary trusts under his will, followed by a Petition to Authorize Sale of Real Estate in Testator's residuary trust filed by Morgan on May 30, 2012, followed by a Supplemental Petition to Sell Real Estate filed by Morgan on August 28, 2012. The petitions related, in whole or in part, to a request to sell the UPS Property, which had been appraised in 2010 at $205,000, for $350,000. It may be noted that real estate alone in the marital and residuary trusts in this multi-million-dollar estate was appraised in 2010 at almost $20,000,000.

The order being appealed was issued in accordance with a 30-page interim report and recommendation of the auditor, to whom the issue had been referred. . . . The order recommended by the auditor was entered by the court without solicitation of further argument . . . :

> AND NOW, this 6[th] day of May, 2013, upon the recommendation of the auditor in this case, it is hereby ordered that the Petition of Morgan to authorize the sale of the UPS Property is hereby granted.

The entry of this order was consistent with a recognition of Morgan's discretionary fiduciary powers and duties under Testator's will, which were acknowledged by the Superior Court in the context of an earlier attempt by her brother to thwart her administration by the device of disqualification:

> With respect to the distribution of assets to the four sibling beneficiaries, the [orphans'] court determined that Morgan's testimony established she is completing the process of obtaining valuations of the estate and trust assets and has asked the beneficiaries if they have a preference regarding the receipt of any particular assets or

cash and that she intends to make an equitable distribution of the assets to the beneficiaries after collecting the information. We agree with the [orphans'] court that this approach does not constitute any breach of fiduciary duty. Testator specifically provided Morgan, in her role as personal representative when making an equal distribution among the four sibling beneficiaries, with the power to decide how to "make distribution of any trust herein created, either in money or in kind, or partly in money and partly in kind." Testator further indicated that the "judgment of the trustees as to what shall constitute an equitable distribution or apportionment shall be binding and conclusive upon the beneficiaries hereof."[3]

Although court approval of the sale was not legally required, the unfortunate dynamics of the estate have resulted, as Morgan's counsel suggested, in a situation where no reasonable buyer would be willing to spend $350,000 on an asset from it without a court order sanctioning the transfer. Objections raised to the sale of the UPS Property at a price far in excess of its appraised value, such as the sale's possible diminution of the value of another piece of estate realty, were either unsupported by any competent evidence from which such a conclusion could justifiably be drawn, or legally untenable, or both. A full explication of the rationale for the order is contained in the auditor's interim report and recommendation . . . .

The second interim order referred to above ["Order II"] also had its inception in the aforesaid Petition to Authorize Plan of Liquidation filed on April 5, 2012, by Morgan. The petition recounted the more than quarter-century history of the estate without closure and the lack of cooperation of the remaindermen of the estate's marital and residuary trusts with the trustee's attempts to proceed with a liquidation of assets following the trusts' terminations, and sought permission of the court to proceed with an orderly liquidation of the same.

The purposes of this petition, in light of the history of [Mumma's] obstruction of Morgan's administration of the estate, was explained by her counsel as follows:

_____

[3] ***In re Estate of Mumma***, 41 A.3d 41, 50 (Pa. Super. 2012).

> Absent an agreement, what Morgan is asking for leave to do is exactly what would be necessary. It's not as though these assets will be sold in a heartbeat. They're not going to be liquidated at a fire sale value.
>
> I don't perceive that there's any real risk that she'll sell the properties at below value or what have you. Any fiduciary could do that. But, of course, that's why we have a fiduciary duty, that's why we have the standards and the ability to surcharge a fiduciary who runs amok.
>
> But the process should begin, and Morgan should be at liberty to be able to discuss with potential buyers and talk with potential buyers or even feel out the market or have someone do it on her behalf with the knowledge that she has the authority to deliver.

As with the first interim order discussed above, the second interim order being appealed was issued in accordance with the aforesaid 30-page interim report and recommendation of the auditor, to whom the issue had been referred. . . . The order recommended by the auditor was entered by the court without solicitation of further argument . . . :

> AND NOW, this 6th day of May, 2013, upon the recommendation of the auditor in this case it is hereby ordered that the request of Morgan, that she be authorized to proceed with a plan of liquidation[,] is hereby granted. Morgan is authorized and directed to proceed with a plan of liquidation of the assets remaining in the trusts established under the Seventh Section and the Eighth Section of the last will and testament of Testator, and following receipt by this court of its Order regarding the accounts previously filed[,] to distribute then remaining assets among and between the named beneficiaries in equal shares without further order of this court.

Again, court approval of the liquidation process was not required under the terms of the will, and as the Superior Court indicated in the context of a prior challenge to Morgan's fiduciary conduct[,] she was not obliged to attempt the impossible task of an immediate in-kind division of assets among the disputatious remaindermen upon the trusts' terminations. The order now on appeal does not purport to adjudicate title to specific items of property or to dispose of the myriad of objections that have been filed to accounts in this matter.[35] Distributions by Morgan

inconsistent with the ultimate resolution of those objections would obviously involve a personal risk that she might not choose to incur in the absence of satisfactory releases.[36]

_____

[35] It is noted that the final 130-page auditor's report in this case, filed as of August 7, 2013, does recommend that all the objections be dismissed.

[36] It may be noted, however, that the final auditor's report has recommended that all of the objections be dismissed and the accounts confirmed.

The final interim order referred to above also had its inception in the aforesaid Petition to Authorize Plan of Liquidation filed on April 5, 2012, by Morgan. The petition recited the ownership interests of the parties herein in a company known as D.E. Distribution Corporation . . . , noted the company's ownership of certain life insurance policies, and sought permission to cash in the policies and distribute the proceeds to the parties in accordance with their interests in the corporation. This issue was included among those referred to the auditor for an interim report and recommendation.

Orphan's Court Opinion ("O.C.O."), 8/30/2013, at 6-14 (minor modifications to nomenclature, other terminology, and formatting for clarity; most footnotes omitted).

Following the above-reviewed proceedings and orders, the parties filed facially interlocutory appeals as follows: On June 4, 2013, at 1003 MDA 2013, Barbara Mumma filed a notice of appeal from the orphans' court's order dated May 10, 2013, which authorized Morgan to prepare and execute a liquidation plan for the assets remaining under the trusts established under Testator's will. On June 10, 2013, Mumma filed two notices of appeal that were docketed respectively at 1027 and 1028 MDA 2013. The orders at

issue in those cases included the same order challenged by Barbara Mumma and the separate May 10, 2013 order authorizing the liquidation of the UPS Property. On July 8, 2013, Mumma timely filed an appeal at 1222 MDA 2013 of the orphans' court's June 7, 2013 order. In that order, the orphans court denied Mumma's "Petition to Compel Compliance with [the] Court's Order Dated July 30, 2012, and for Sanctions and Alternatively, to Vacate Said Order." The July 30, 2012 order authorized Morgan to liquidate and distribute certain life insurance policies.

On July 12, 2013, this Court *sua sponte* consolidated the appeals docketed at 1003, 1027, and 1028 MDA 2013 for decision. On September 9, 2013, this Court entered a *sua sponte* order consolidating 1222 MDA 2013 with the three previously-filed appeals.

On June 7 and June 18, 2013, the orphans' court filed orders directing the appellants to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The parties timely complied, and the orphans' court entered the above-excerpted Rule 1925(a) opinion on August 30, 2013.

On July 23, 2013, Morgan filed in this Court an Application to Quash Mumma's and Barbara Mumma's appeals. On August 12, 2013, Barbara Mumma filed a response in opposition to that application.[4] On September 9,

---

4    Mumma did not file a separate opposition to Morgan's motion.

2013, this Court filed a *per curiam* order denying the motion to quash without prejudice to raise the issue before the panel assigned to this matter. For the reasons that follow, we find that this Court lacks jurisdiction over this interlocutory appeal. Consequently, we grant Morgan's motion to quash these appeals and remand.

Our analysis begins and ends with Morgan's motion to quash the instant appeals.[5] Pennsylvania Rule of Appellate Procedure 341 provides generally that appeals may be taken as of right only from final orders. Pa.R.A.P. 341. A final order is any order that "disposes of all claims and of all parties," "is expressly defined as a final order by statute," or "is entered as a final order pursuant to" Rule 341(c). Pa.R.A.P. 341(b). Rule 341(c) permits the trial court to "enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case."

_____

[5] In her motion, Morgan refers only to Mumma's appeals docketed at 1027 and 1028 MDA 2013, excluding by omission 1003 and 1222 MDA 2013. However, her exclusion of two of the orders before this Court does not preclude our review of our subject matter jurisdiction. Morgan raises a colorable claim regarding our jurisdiction, and we must address that issue regardless of whether or when it was raised. **See Grom v. Burgoon**, 672 A.2d 823, 824-25 (Pa. Super. 1996) ("[T]he question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*."). When determining whether we have subject matter jurisdiction, a question of law, our standard of review is *de novo* and the scope of our review is plenary. **Corbett v. Locust Twp.**, 968 A.2d 1263, 1269 (Pa. 2009).

However, "in the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order." Pa.R.A.P. 341(c).

Qualifying Rule 341 are two rules that arguably pertain to this case, both of which are discussed by Morgan and in Barbara Mumma's response to Morgan's motion. Rule 313 provides that an appeal may be taken as of right from a collateral order, which is "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

Barbara Mumma relies foremost upon Rule 342, which provides, in relevant part, as follows:

> **(a) General rule.** An appeal may be taken as of right from the following orders of the Orphans' Court Division:
>
> (1) An order confirming an account, or authorizing or directing a distribution from an estate or trust;
>
> * * *
>
> (6) An order determining an interest in real or personal property . . . .

Pa.R.A.P. 342. In her opposition to Morgan's motion, Barbara Mumma cites no case law to support her argument that this Court should find jurisdiction based upon these provisions. However, our Supreme Court and this Court recently have taken up the question under similar circumstances.

In **In re Estate of Stricker**, 977 A.2d 1115 (Pa. 2009), our Supreme Court held that an orphans' court's order to sell real estate in connection with the disposition of an estate was an interlocutory order that was not appealable under Rule 313 or former Rule 342.[6]  In that case, two tracts of land constituted the bulk of the decedent's estate, which was to be disposed of by two co-executors, one of whom was the appellant, in favor of approximately ten beneficiaries.  One tract was subject to a third party's option to repurchase the property, which the third party had exercised.  The remaining tract was put up for auction, where John Fulton made the highest bid.  The orphans' court directed the estate to deliver that tract to Fulton. *Id.* at 1116-17.

Before the auction occurred, the appellant co-executor had made multiple below-market value offers to buy both tracts.  His co-executrix and the beneficiaries rejected the offers.  Although the appellant participated in the public auction for the unrestricted property, Fulton's bid not only exceeded the appellant's, but indeed exceeded the appellant's prior offers for both tracts combined.  The appellant thereafter refused to cooperate in the transfer of either tract.  The co-executrix then petitioned the court to compel the appellant to sign the agreement of sale disposing of the tract

_____

[6]     Rule 342 was amended, effective February 12, 2012, in ways that are reflected in the reproduction immediately *supra*.  These amendments factor into the instant jurisdictional question in ways discussed at length, *infra*.

purchased by Fulton. The orphans' court entered an order so directing, and the appellant appealed the orphans' court's order. This Court quashed that appeal as interlocutory. On remand, the orphans' court ruled that the co-executors were bound to take the necessary steps to consummate the sale of one tract. Similarly, the orphans' court directed that the co-executors take the necessary steps to complete the sale of the other tract to Fulton. *Id*. at 1117.

Once again, the appellant sought relief in this Court, and once again this Court quashed the appeal for want of jurisdiction. First, we held that the orders were not final because a final accounting of the estate had not been rendered. Second, we held that the orders appealed from were not appealable under the collateral order doctrine as embodied by Rule 313. *Id.*

The Supreme Court granted the appellant's petition for allowance of appeal to address whether the orders in question were final pursuant to Rules 341 and 342 or were collateral orders that were appealable as of right pursuant to Rule 313. *Id.* The Court made the following observations:

> Rule 342 allows Orphans' Court judgments to designate as final (and therefore immediately appealable) an order "making a distribution, or determining an interest in realty or personalty or the status of individuals or entities." Pa.R.A.P. 342. It does not require that any particular class of orders be treated as final, but instead leaves the determination of finality of orders not disposing of all claims and all parties up to the Orphans' Court judge. Pa.R.A.P. 342(1). Certification under Rule 342 is wisely left to the discretion of the Orphans' Court[ judges], who are in the best position to take the facts of the case into account when deciding whether an immediate appeal would be appropriate.

- 13 -

"It is fundamental law in this Commonwealth that an appeal will lie only from final orders, unless otherwise expressly permitted by statute." *T.C.R. Realty, Inc., v. Cox*, 372 A.2d 721, 724 (Pa. 1977). An appeal from an order directing the administrator of a decedent's estate to sell real estate belonging to the decedent is interlocutory and must be quashed. *In re Maslowski's Estate*, 104 A. 675 (Pa. 1918); *In re Estate of Habazin*, 679 A.2d 1293 (Pa. 1996); *see also Appeal of Snodgrass*, 96 Pa. 420, 421 (Pa. 1880) (holding that an order directing sale of real estate for payment of decedent's debts is not definitive, and an appeal will not lie therefrom: "Why should the proceeding be brought here by piece-meal when the whole may be reviewed on an appeal from the final confirmation?").

*Id.* at 1117-18 (citations modified).

The appellant argued that, if he was not afforded an immediate appeal, "the tracts [would] be sold, his claims regarding the properties [would] be lost, and therefore the orders should be considered final."

*Id.* at 1118. Our Supreme Court's response was telling:

It is true that the real estate will no longer be available to [the appellant] once a sale to another party is accomplished. But [the appellant] was not bequeathed the tracts themselves. Instead, [the appellant] is entitled only to a share of the decedent's estate after it has been liquidated. Therefore, his claim that an immediate appeal is necessary to protect his interests fails. Indeed, [the appellant] has no greater rights with respect to this property than any potential buyer. Moreover, if [the Court] accepted [the appellant's] argument that any claim on or about property that might be sold during the probate process should be immediately appealable, the appellate court system would be flooded with such appeals and the

- 14 -

administration of decedents' estates would be unreasonably delayed.[7]

*Id.* at 1118; *cf. id.* at 1119-21 (Saylor, J., concurring) (positing that immediate appeal in certain circumstances might expedite disposition of the estate). The Court went on to explain that "an order is not final and appealable merely because it decides one issue of importance to the parties." *Id.* at 1118 (quoting 3 Patridge-Remick, *Practice & Procedure in the Orphans' Court of Penna.* § 26.04).

The Court also held that the order in question was not a collateral order entitled to immediate review under Rule 313. Noting that, "to qualify as collateral, an order must be separable from the main cause of action," and that the collateral order doctrine "is to be construed narrowly to preserve the integrity of the general rule that only final orders may be appealed," the Court held that "it is not possible that an order to sell estate property **in pursuit of**" in furtherance of the final accounting and distribution of the estate provided for by the will could be "collateral to the main cause of action." *Id.* at 1119 (emphasis added). To the contrary, the Court found, it was "*central* to the main cause of action." *Id.* (emphasis in original). Thus, the order in question did not qualify for immediate appeal as a collateral order under Rule 313.

_____

[7] In light of this case's procedural history, and in particular Mumma's penchant for filing appeal after appeal in this Court, we cannot write off these comments as hyperbolic or hypothetical.

After **Stricker**, however, the Supreme Court amended Rule 342. No longer was the question of appealability vested strictly in the orphans' court. Rather, the revised rule identified certain orders that would henceforth be appealable as of right, independent of any orphans' court finding regarding the nature of the order and its place in the proceedings. As noted, in relevant part, Barbara Mumma argues that subsections (a)(1) or (a)(6) apply in this case.[8] These subsections respectively designate orphans' court orders that either "confirm[] an account, or authoriz[e] or direct[] a distribution from an estate or trust" or "determin[e] an interest in real or personal property" as immediately appealable. Pa.R.A.P. 342(a)(1), (6). Such orders, moreover, **must** be appealed within thirty days of their entry or the right to appeal them will be deemed waived. Pa.R.A.P. 342(c); **see** Pa.R.A.P. 903(a) (prescribing thirty-day time limit).

This Court interpreted and applied amended Rule 342 in **In re Estate of Ash**, 73 A.3d 1287 (Pa. Super. 2013). In that case, the will at issue made specific cash bequests and directed that the remaining personal and

---

[8]    In addition to subsections (a)(1) and (a)(6), Barbara Mumma suggests in passing that subsections (2) ("An order determining the validity of a will or trust"), (3) ("An order interpreting a will or a document that forms the basis of a claim against an estate or trust"), and (4) ("An order interpreting, modifying, reforming, or terminating a trust") also may apply to this case, but does not specify why she believes this to be the case. Answer to Motion to Quash Appeal at 4 n.3. We can discern no arguable basis upon which to align the orders subject to the instant appeal with any of those criteria. Accordingly, our discussion focuses exclusively upon subsections (a)(1) and (a)(6).

real property be sold, with the proceeds to be divided among three residual beneficiaries. The appellant, Joseph Heit, was named executor; the remaining two beneficiaries were his brother James Heit and Duane Fetter. As executor, the appellant conveyed to himself (as an individual) a tract of land referred to as Tract 1, which he contended was consistent with an agreement of sale entered into with the decedent prior to his death. The orphans' court set aside the sale, removed the appellant as executor, and appointed an administratrix in the appellant's place. The appellant did not appeal that order. *Id.* at 1288.

Thereafter, Fetter indicated that he had entered an agreement with the decedent to purchase an adjoining tract ("Tract 2"), and signaled to the administratrix that he was willing to buy Tract 2 as well as the two adjoining tracts, Tract 1 and Tract 3. It appeared from the record that the administratrix intended to sell these tracts to Fetter. Thereafter, the appellant filed a "Petition to Force Sale of Real Estate," wherein he asserted that he was willing to buy Tract 1. He also contended that Tract 1 would be landlocked unless an easement were granted over Tract 2. He asked the court to grant an order directing the administratrix to grant the easement over Tract 2 and stay the sale of Tract 1 until the parties' various disputes regarding the property were resolved. The administratrix, however, indicated that it would be in the best interests of the estate to sell all three tracts to Fetter, both because the net proceeds would be greater and because it would avoid the prospect of litigation with Fetter. The orphans'

court entered an order denying the appellant's petition and authorizing the administratrix to enter into an agreement selling all of the tracts to Fetter, and the appellant appealed. *Id.* 1288-89.

We reviewed the case in light of the Supreme Court's *Stricker* decision, and found the facts in *Ash* to be apposite, notwithstanding the intervening amendment to Rule 342:

> The order on appeal before us authorizes the administratrix to sell real estate formerly belonging to [Ash] in order to accomplish the eventual division of the estate assets (*i.e.*, the sale proceeds) among the beneficiaries as directed by Ash's will. Pursuant to *Stricker*, we conclude this order is neither final nor collateral but, instead, is interlocutory. . . .
>
> In reaching our result, we are mindful that the Rules of Appellate Procedure addressing the appealability of Orphans' Court orders have changed somewhat since *Stricker* was decided. . . . Effective February 13, 2012, the Supreme Court deleted from Rule 342 the provision concerning the ability of an Orphans' Court to make determinations of finality and, instead, listed various orders that would be immediately appealable. *See* Pa.R.A.P. 342(a). Among the orders listed in Rule 342 is an order determining an interest in real property. Pa.R.A.P. 342(a)(6).
>
> We do not believe the order before us is one of the appealable orders set forth by Rule 342, whether in Subsection (6) or otherwise. Consequently, we do not believe Subsection (6) and/or any other post[-]*Stricker* change(s) to Rule 342 negate *Stricker* and render the order before us appealable. We understand the effect of the instant order will be to allow the realty sale and, if the administratrix sells the tracts, Fetter will come to own them. Thus, if the sale is completed, the order will eventually lead to a change in the ownership interest of the realty. Nevertheless, the Orphans' Court decision now on appeal did not involve the court having to resolve some dispute about who had or has an interest in the tracts: The estate obviously owns them. The court's decision was about . . . the propriety of her plan to reduce the estate assets to cash by sale to a

> particular party, the goal being to distribute the sale proceeds in accordance with the will. The court's decision was not about determining an interest in the subject realty. Accordingly, ***Stricker*** controls this case.

***Id.*** at 1289-90 (citations modified; footnotes omitted). In a footnote, we acknowledged that certain language in the comment to the rule as amended, which drew upon Justice Saylor's concurring opinion in ***Stricker***, perhaps complicated the analysis. However, we concluded that if "the changes to Rule 342 were indeed meant to abrogate ***Stricker*** and . . . to transform an order such as the one before us into an order determining an interest in realty under Subsection (6), . . . that pronouncement should be made by the Supreme Court. At present, we will follow ***Stricker***." ***Id.*** at 1290 n.5.

Although Mumma does not directly engage the argument for quashal, leaving that task to Barbara Mumma, in his brief on the merits he raises one consideration that arguably distinguishes ***Ash*** and ***Stricker***. The argument in question nominally addresses the merits rather than the justiciability of the appeal, but it is presented in a form that implicates the jurisdictional issue. Specifically, Mumma argues that the orphans' court improperly directed Morgan to liquidate assets that are owned in substantial part by entities other than the estate. Brief for Mumma at 23-26, 34-36.

Unless Mumma's characterization of the ownership of various interests and properties as fractional distinguishes this case dispositively from ***Ash*** and ***Stricker***, it is plain that ***Stricker***, and by extension ***Ash***, would compel us to rule that this appeal is interlocutory. In ***Ash*** and ***Stricker***, as Mumma

observes, the estate's ownership of the properties in question was, indeed, undisputed. Instead, solely at issue were questions pertaining to the executor's authority to dispose of those properties in advance of distributing the proceeds and balance of the estates to the relevant beneficiaries. Thus, in effect, neither Barbara Mumma nor Mumma have posited any other basis upon which we might find that their invocations of Rule 342(a)(1) and (6) are not in vain under those precedents.

Accordingly, we must assess the accuracy of Mumma's characterization of the relevant orphans' court orders as directing the liquidation of property that the estate does not own. The first and more specific of the orders granted "the Petition of [Morgan] to authorize the sale of the real property owned by the Estate of [Testator], located on UPS Drive in Dauphin County and commonly referred to by the parties as 'the UPS Property.'" Order I, 5/10/2013. The second order, in relevant part, provided as follows:

> [U]pon the recommendation of the [a]uditor in this case it is hereby ordered that the request of [Morgan], that she be authorized to proceed with a plan of liquidation, is hereby granted. [Morgan] is authorized and directed to proceed with a plan of liquidation of the assets remaining in the trust[s] established under the Seventh Section and Eighth Section of the Last Will and Testament of [Testator], and following receipt by this Court of its Order regarding the accounts previously filed to distribute then remaining assets among and between the named beneficiaries . . . in equal shares without further order of this Court.

Order II, 5/10/2013.

- 20 -

Order II, in particular, does not clearly direct anything with respect to the specific circumstances of the fractional ownership of various assets. First, it directs the implementation of "**a** plan of liquidation of the assets remaining in the trust[s]" (emphasis added). It does not specify such a plan, nor does it respond directly or preemptively to any challenges to the prospective contours of such a plan. It stands to reason, as a matter of law and of common sense, that such a plan could have provided for the disposition of only those assets remaining in the trusts, whether fractional or otherwise. While it is true that Morgan might erroneously or improperly seek to sell interests that the trusts do not own, it is not at all clear that no remedy will lie in the event that she does so. Moreover, nothing in the language of Order II directs the sale of any assets **not** held by the trusts. Consequently, any disputes that occur with respect to the particular properties or interests that Morgan seeks to sell must be taken up as they arise, not hypothetically.[9]

Order I, however, is more specific. That order calls for Morgan to authorize the sale of "the UPS Property," which the court identified therein as "the real property owned by the [e]state of" Testator. Mumma's point is that the orphans' court did not direct the sale of the Trust's **interest** in that property, but rather of the property in its entirety.

---

[9]   **Cf. Silver v. Zoning Bd. of Adjustment**, 112 A.2d 84, 87 (Pa. 1955) ("A court should not render advisory decisions on hypothetical facts.").

- 21 -

Notably, the orphans' court emphasized the limited scope of Orders I and II in terms directly responsive to Mumma and Barbara Mumma's appeals to Rule 342(a)(1) and (6):

> The order now on appeal does not purport to adjudicate title to specific items of property or to dispose of the myriad of objections that have been filed to accounts in this matter. Distributions by Morgan inconsistent with the ultimate resolution of those objections would obviously involve a personal risk that she might not choose to incur in the absence of satisfactory releases.

O.C.O. at 11 (footnotes omitted).

To the extent the orders speak to, or incorporate, Morgan's prayers for relief—in itself, a debatable point—the orders do not appear to authorize or direct Morgan to sell what she or the interests she commands do not control. In connection with the UPS Properties, Morgan requested the following relief: "[Morgan] seeks an order from [the orphans' court] authorizing her to proceed with the sale of the [UPS Properties], upon the terms and conditions of the Agreement [for Purchase and Sale]." Petition to Authorize Sale of Real Estate at 2. In connection with her broader liquidation petition, Morgan requested the following relief:

> [Morgan] seeks an order from [the orphans' court] authorizing her to engage a third party, experienced in the sale of real estate, to conduct an orderly exposure of the real estate owned by the Trusts, [D.E. Distribution, G-A-T Distribution, Mumma Realty Association I ("MRA I") and Mumma Realty Association II ("MRA II") (collectively, the "Tenancies-In-Common")], to the market, for ultimate sale, with the net proceeds to be so distributed, and further to surrender the life insurance policies held by [D.E. Distribution] for the cash value of such policies,

- 22 -

thereby providing liquidity in the interim until the [t]rust's assets may be converted to cash for ultimate distribution.

Petition to Authorize Plan of Liquidation at 6.

In Morgan's liquidation petition, she identified the relevant fractional ownership interests of the Tenancies-In-Common. The Tenancies-In-Common are owned in part by Mumma, Linda Mumma, Barbara Mumma, and Morgan (individually). Additionally, the estate of Widow also has an interest in MRA I. Petition to Authorize Plan of Liquidation at 2-3. In her liquidation petition, Morgan asserted, and neither Mumma nor Barbara Mumma disputes, that the trusts and Morgan's interests combined add up to 87.3% of MRA I and 98.6% of MRA II, with the vast majority of those tenancies (81.8% and 98.1%, respectively) owned by the trusts. *Id.* In connection with the Tenancies-In-Common, owners are authorized to act, including the sale of "the entire Premises or any part thereof," only by a majority vote weighted according to the respective shares of the tenants-in-common. MRA Agreement Among Tenants-in-Common, 12/19/1986, at 12 ¶4. *But see id.* at 8 ¶ 3 (providing restrictions upon, and a right of first refusal in association with, a tenant-in-common's effort to sell his or her interest in the tenancy-in-common).

Morgan further asserts that the trusts own 50% of the stock of Union Quarries, Inc., with the remaining shares held by third parties with no relationship to the estate. As well, the trusts own a parcel of real estate in Cumberland County, Pennsylvania. *Id.* at 3. The trusts also own 27.2% of

the stock in D.E. Distribution, with additional shares distributed amongst the estate of Widow, Mumma, Linda Mumma, Barbara Mumma, and Morgan. *Id.* at 4. Thus, as executrix of Widow's estate and the trusts, and in tandem with her own individual holdings in D.E. Distribution, Morgan controls 58.1% of that entity. The same pattern obtains with regard to G-A-T Distribution, of which the trusts own 80.1%, the estate of Widow owns 18%, and Morgan individually holds 0.5%, for a total share of approximately 98.6%. *Id.* at 4-5.

While it is true that, in the liquidation petition, Morgan seeks to "expose" the real estate owned by various entities, she does not request that the court direct any certain corporate activity on the part of those entities, nor does she expressly seek to bypass any governing bylaws or agreements pertaining to them or to the Tenancies-In-Common that might be necessary to effectuate sale of those interests. At most, her prayer for relief relies upon the silent premise that such liquidations will be practicable because Morgan, in her various individual and representative capacities, has authority, through her constructive control of majority interests in the subject property (combining the trusts' interests, the interests of the Widow's estate—as to all of which Morgan serves as executor—and Morgan's individual interests) to effectuate that result.

Given the generality of the orphans' court's orders, it is not for us to assess how, precisely, Morgan intends to or actually will seek to dispose of the trusts' various assets and holdings in which the trusts hold exclusive or

fractional interests. To the extent this implicates corporate parties, there may be legitimate grounds for dispute as to her authority to act in the face of opposition. That, in turn, may form the foundation of a wholly separate legal action. Such a dispute would not be the first ancillary dispute resolved separately that is associated with the Mumma Estate. However, this does not by itself warrant a finding that the orphans' court's order is appealable as of right under Rule 342 or as a collateral order under Rule 313.[10] It simply does not materially distinguish this case from **Stricker** and **Ash**.

As well, we cannot overlook the fact that Morgan's authority in this regard already has been decided by this Court in a prior decision:

> [Testator] specifically provided Morgan, in her role as his personal representative when making an equal distribution among the four sibling beneficiaries, with the power to decide *how* to "make distribution of any trust herein created, either in money or in kind, or partly in money and partly in kind." [Testator] further indicated that the "judgment of the trustees as to what shall constitute an equitable distribution or apportionment shall be binding and conclusive upon the beneficiaries thereof."

**Mumma**, 41 A.3d at 50 (emphasis in original; citations omitted). In authorizing Morgan to make distributions in kind, Testator also gave Morgan the means to address any indivisible property interests or shares in

---

[10] To the contrary, since Rule 313 was not amended in the wake of the **Ash** decision, there is little question that **Ash** controls the Rule 313 argument in this case in favor of quashal.

corporate entities. Whether she opts to resolve them in that fashion, rather than by liquidating them entirely, necessarily is conjectural at this juncture.

In light of these considerations, we interpret the orphans' court's orders as authorizing Morgan to liquidate the Trust's assets. Because that liquidation is a condition precedent to a final accounting and distribution of the trusts, the orders do not "confirm[] an account, or authoriz[e] or direct[] a distribution from the trusts." Pa.R.A.P. 342(a)(1). Because the events necessary to those steps have yet to occur, Rule 342(a)(1) does not apply to render Mumma's and Barbara Mumma's justiciable at this time.

Correlatively, we do not find that the orphans' court's orders were intended to authorize, or have the effect of authorizing, Morgan's disposition of assets that the trusts do not own or do not own a controlling interest in, without regard to the separately prescribed procedures for, or restrictions upon, such actions. Nor do they "determin[e] an interest in real or personal property." Pa.R.A.P. 342(a)(6). The mechanics of Morgan's liquidation must be left to the agreements, bylaws, or laws that apply to the disposition of those assets, a matter for another day and perhaps another tribunal. In providing for the liquidation of the trusts' assets, such as they are, the orphans' court merely reaffirmed Morgan's right to exercise the authority that was vested in Morgan by the terms of the governing estate documents, which already has been reaffirmed by this Court. Thus, the orphans' court's orders are no more appealable under Rule 342(a)(6) than they are under Rule 342(a)(1).

When all of the peripheral matters are set aside, we are left with a circumstance that is not materially distinguishable from those that obtained in **Stricker** and **Ash**, in which the predominant issue was the executor's authority to liquidate estate assets as he or she deemed appropriate in furtherance of a final accounting and distribution of the estate. An order authorizing an executor to liquidate assets held by an estate or trust, which is an order short of a final accounting of the estate in question, is an interlocutory order not subject to immediate appellate review. Accordingly, we lack jurisdiction to hear the instant appeal.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2014